**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:22-CR-86 |
| | ) | |
| CHARLES HUNTER HOBSON | ) | |

<u>**GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND
ARGUMENT REGARDING THE PREVALENCE OF CORRUPTION**</u>

The United States of America, by and through undersigned counsel, moves this Court *in limine* to preclude evidence and argument at trial regarding the prevalence of bribery in Egypt, within the Defendant's former employer, or by its competitors. Defendant has previously suggested that corrupt practices abroad (and particularly in Egypt), are either ingrained or otherwise necessary to conduct business there. Such arguments are entirely irrelevant to the issue of the Defendant's guilt, and they would, if permitted, risk confusing the jury and/or impermissibly encourage jury nullification. Accordingly, they should be precluded.

I.    **Defendant Should Be Precluded from Offering Evidence Related to the Purported "Common Practice" of Corruption**

Relevant evidence is that which has a "tendency to make a fact more or less probable than it would be without the evidence" when that fact "is of consequence in determining the action." Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. Fed. R. Evid. 402. Regardless of the merits of any claim about the purported ubiquity of bribery in Egypt, such evidence is wholly irrelevant to the charges in the Indictment and should be excluded at trial of this matter.

It is well-settled that the prevalence of bribery in a country is no defense to a violation of the Foreign Corrupt Practices Act ("FCPA") or other criminal laws. Indeed, courts have long held that evidence of a widespread practice does not excuse criminal conduct. *See Newton v. Merrill,*

*Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 274 (3d Cir. 1998) (*en banc*) ("Even a universal industry practice may still be fraudulent."); *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp. 2d 539, 571 n. 37 (E.D. Pa. 2005) ("Even if 'everyone is doing it,' for the reasons stated herein, such a practice is not equitable or lawful. Rampant disregard for legal requirements does not in and of itself turn an illegal act into a legal one […]."). *See also United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (holding that "only [the defendant's] actions and state of mind were material to her guilt" and the mere fact "that others may have been the beneficiaries of improper conduct does nothing to excuse [the defendant]," and also concluding that such evidence was properly excludable under Rule 403 because it was likely to create a "sideshow from which the jury could have gleaned little valuable information"); *United States v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 991 (7th Cir. 1999) (concluding district court correctly excluded evidence of industry custom and practice "based on a fear that the jury might find [the defendant] not guilty because 'everyone does it'"); *United States v. Fowler*, 932 F.2d 306, 315-16 (4th Cir. 1991) (affirming district court's exclusion of testimony supporting "the everybody-does-it defense" as irrelevant); *United States v. Brookshire*, 514 F.2d 786, 788-89 (10th Cir. 1975) ("[C]ustom and usage involving criminality do not defeat a prosecution for violation of a federal criminal statute."); *Burnett v. United States*, 222 F.2d 426, 427 (6th Cir. 1955) (per curiam) ("No custom is a justifiable defense for violation of the criminal code of the United States."); *Smith v. United States*, 188 F.2d 969, 970 (9th Cir. 1951) ("Custom, involving criminality, cannot justify a criminal act."); *United States v. Mahaffy*, No. 05–CR–613(S–3)(ILG), 2007 WL 1213738, at \*3 n.5 (E.D.N.Y. Apr. 24, 2007) (noting that evidence relating to industry practice "is entirely irrelevant and improper" because "[i]ndustry practice is not a defense to fraud"); *United States v. Slapo*, 285 F. Supp. 513, 513-14 (S.D.N.Y. 1968 ) ("[W]e have not yet reached the point, at least in this court's view, where an industry custom and practice serves to repeal criminal laws.")

Indeed, the Fifth Circuit has explicitly rejected the notion that the widespread nature of bribery in a foreign jurisdiction or industry can excuse FCPA liability. In *United States v. Kay*, the defendants, executives at American Rice, paid Haitian officials to reduce duties and taxes on the company's rice, and were convicted of violating the FCPA. 513 F.3d 432, 439 (5th Cir. 2007). The defendants claimed they did not receive fair notice that such conduct was illegal under the FCPA. *Id.* at 440. The Fifth Circuit acknowledged that such payments to Haitian officials were widespread among importers conducting business in Haiti but concluded that "[t]he fact that other companies were guilty of similar bribery during the 1990's does not excuse [the company's] actions; multiple violations of a law do not make those violations legal or create vagueness in the law." *Id.* at 442.

Similarly, in *United States v. Inniss*, No. 18-CR-134, 2019 WL 6999912 (E.D.N.Y. Dec. 20, 2019), the court granted the Government's *motion in limine* requesting exclusion of such prevalence-focused evidence and argument, precluding "any evidence that [defendant's employer] has paid bribes to other individuals, or argument that bribery may have been commonplace or part of industry practice in Barbados." *Id.* at *7. As the Court determined, such evidence was irrelevant, among other reasons, because "whether or not bribery is an industry practice in Barbados would not shed any light on [the defendant's] state of mind." *Id.* Similarly, here, whether or not bribery is an "industry practice" in Egypt sheds no light on the Defendant Hobson's own corrupt intent.

Furthermore, evidence or argument pertaining to industry practice would, if allowed, create a significant risk of jury confusion and unfair prejudice. *See* Fed. R. of Evid. 403; *see also United States v. Brooks*, 681 F.3d 678, 709 (5th Cir. 2012) (affirming district court's exclusion of defendant's proffered industry practice evidence that "other energy companies were also submitting similarly false data" because evidence that fraudulent practices may be common in a particular industry "pose[s] a threat of confusing the jury and detracting from relevant information

about the conduct of the actual parties"); *Oldbear*, 568 F.3d at 821 (finding exclusion of customary practice evidence proper under Rule 403 because it was likely to create a "sideshow from which the jury could have gleaned little valuable information"). Pointing to industry custom only serves to "over complicate the issue of whether or not [Defendant] acted with fraudulent intent." *United Stats v. Vaughan*, No. 4:22-CR-162, 2025 WL 964024, at *3 (E.D. Tex. Mar. 31, 2025).

Any related argument by the Defendant here would amount to nothing more than an impermissible appeal to the jury to engage in nullification. *See, e.g.*, *United States v. Kemp*, 500 F.3d 257, 303 (3d Cir. 2007) ("[A] juror who . . . commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role."). Trial courts have "wide latitude" to impose "reasonable limits" on defense tactics aimed at jury nullification. *United States v. Vargas*, 629 F. App'x 415, 417 (3d Cir. 2015); *see also United States v. Thomas*, 116 F.3d 606, 614, 616 (2d Cir. 1997) (Nullification is "a violation of a juror's oath to apply the law as instructed by the court. . . . [T]rial courts have the duty to forestall or prevent such conduct."); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (citations omitted) (a trial judge "may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *see also United States v. Polouizzi*, 564 F.3d 142, 162-63 (2d Cir. 2009) ("Although jurors have the capacity to nullify, it is not the proper role of courts to encourage nullification."); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) (holding that defense counsel is not permitted to argue that the jury should nullify); *United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975) (affirming the district court's refusal to admit evidence that was irrelevant to the charged offenses but which might encourage a "conscience verdict" of acquittal and noting that nullification "undermines the very basis of our legal system"), *supplemented by*, 536 F.2d 410 (D.C. Cir. 1976).

The Government respectfully submits that the Defendant should not be permitted to introduce irrelevant, confusing evidence regarding the pervasiveness of bribery in Egypt or related arguments intended to encourage jury nullification.[1]

## CONCLUSION

Wherefore, based on the foregoing, the United States respectfully submits that the Court should preclude the Defendant from introducing evidence or argument at trial regarding the prevalence of corruption in Egypt, and that the Defendant's conduct should therefore be excused.

Respectfully submitted,

TROY RIVETTI
FIRST ASSISTANT UNITED STATES ATTORNEY

*s/ Nicole A. Stockey*
Nicole A. Stockey
Assistant United States Attorney
PA ID No. 306955

LORINDA LARYEA
ACTING CHIEF, CRIMINAL DIVISION
FRAUD SECTION

---

[1]    As detailed above, substantial caselaw demonstrates that evidence and argument regarding the prevalence or pervasiveness of bribery in Egypt is improper and should be excluded. Such evidence and argument, if admitted, would improperly suggest that bribery is either permissible or routinely unpunished in Egypt—and that it would thus be unfair to hold Defendant accountable under U.S. law. In addition to its irrelevance, such an assertion is also false, and the Government would offer additional evidence and argument in rebuttal.

As the Government disclosed to Defendant on January 22, 2025, it intends to call an expert on Egyptian law, Professor Mohamed A. Arafa, to testify about the Egyptian bribery and corruption laws which form one of the "specified unlawful acts" underlying the money laundering charges alleged in Counts 4, 5, and 6 of the Indictment.

Not only is bribery illegal in Egypt, but in this case, Defendant's Egyptian bribe-paying intermediary and one of the Egyptian officials who accepted bribes were both convicted in Egypt for their roles in the scheme charged here. Court documents reflecting these convictions were produced to Defendant in 2022 and 2023. If Defendant were permitted at trial to claim that such conduct is customary or industry practice, then the Government respectfully submits that it should be permitted to respond with evidence of its illegality in Egypt, and that Egyptian co-conspirators in Defendant's scheme were, in fact, prosecuted for their roles in the scheme.

_s/ Natalie R. Kanerva_
Natalie R. Kanerva
NY ID No. 5134952
Ligia Markman
DC ID No. 997430
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20005